UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-22668-CIV-ALTONAGA

HUSSAM MOHAMMAD
ABUEL-HAWA,

 Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

 Respondents.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner, Hussam Mohammad Abuel-Hawa's

Petition for Writ of Habeas Corpus . . . [ECF No. 1], filed on April 17, 2026.  Petitioner challenges

his detention at the Krome North Service Processing Center ("Krome") in Miami, Florida.  (*See

generally id.*).  Respondents filed a Response [ECF No. 8]; to which Petitioner filed a Reply [ECF

No. 9].  For the following reasons, the Petition is granted in part.

**I.  BACKGROUND**

Petitioner is a stateless Palestinian[1] who first entered the United States over 43 years ago

and previously held Lawful Permanent Resident status.  (*See* Pet. 1, ¶¶ 5, 11).[2]  On September 24,

1999, Petitioner was convicted of aggravated assault and possession of cannabis in Broward

---

[1] Respondents contend that Petitioner is a citizen of Jordan and had a Jordanian passport issued to him on May 18, 1998, in Amman, Jordan.  (*See* Resp. 2 (quotation marks and citation omitted)).  According to Petitioner, "Jordan issues temporary passports to stateless Palestinians from Jerusalem strictly for travel purposes." but those documents "do not confer Jordanian nationality, citizenship, or the right of return." (Reply 3 (citing Pet., Ex. 17, Reponses to Information Requests [ECF No. 1-17] 4)).

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

CASE NO. 26-22668-CIV-ALTONAGA

County, Florida.  (*See id.* ¶ 12; *see id.*, Ex. 11, Criminal Docket [ECF No. 1-11]).  On October 17, 2001, Petitioner was issued a Notice to Appear, charging him as removable from the United States under Section 237(a)(2)(C) of the Immigration and Naturalization Act.  (*See* Resp. 2; *see id.*, Ex. 4, Notice to Appear [ECF No. 8-4] 1).  On November 2, 2001, Petitioner was apprehended by U.S. Immigration and Customs Enforcement ("ICE") and taken into custody.  (*See* Resp. 2).  Petitioner was released from custody on an order of release on his own recognizance on November 20, 2001. (*Id.* (citing *id.*, Ex. 1, Decl. of Deportation Officer Joseph Delgado ("Delgado Decl.") [ECF No. 8-1] ¶ 10)).

On November 21, 2001, Petitioner applied for relief from removal.  (*See* Resp. 2 (citing Delgado Decl. ¶ 11)).  The Immigration Judge ("IJ") denied Petitioner's application on February 5, 2004, and ordered Petitioner removed to Jordan.  (*See* Pet. ¶ 13; *see also* Resp. 2 (citing Delgado Decl. ¶ 12); *see id.*, Ex. 6, Feb. 5, 2004 Order [ECF No. 8-6] 1).  Petitioner appealed and on February 1, 2005, his order of removal became administratively final after the Board of Immigration Appeals ("BIA") dismissed his appeal.  (*See* Pet. ¶ 14; Resp. 2 (citing Delgado Decl. ¶ 13); *see also id.*, Ex. 7, Feb. 1, 2005 Order [ECF No. 8-7] 2)).

Israel and Jordan refused to issue Petitioner travel documents or recognize him as a citizen, rendering his removal impossible.  (*See* Pet. ¶ 14).  As a result, on June 18, 2013, ICE released Petitioner on an Order of Supervision ("OSUP").  (*See id.*; *see id.*, Ex. 7, OSUP [ECF No. 1-7] 2). Petitioner contends he has complied with all conditions of his OSUP, including periodic check-ins with ICE, and has worked in a sales position since April 2024.  (*See* Pet. ¶ 15).

On October 17, 2025, Petitioner was detained after he attended a scheduled ICE check-in in Miramar.  (*See id.* ¶ 16).  The next day, ICE served Petitioner with an I-229(a) Warning for Failure to Depart and a Notice of Removal, stating that ICE intended to remove him to Jordan.

(*See id.*, Ex. 5, I-229(a) and Notice of Removal [ECF No. 1-5] 2–3).  Also on October 18, 2025, ICE issued Petitioner a Notice of Revocation of Release, revoking his OSUP.  (*See* Pet. ¶ 18; *see id.*, Ex. 8, Notice of Revocation of Release ("Notice") [ECF No. 1-8]).  Petitioner remains detained at Krome.  (*See* Resp. 3 (citing Delgado Decl. ¶ 27)).

On December 16, 2025, Israel denied issuance of a travel document to Petitioner because he did not have an identification document from Israel.  (*See* Resp. 3 (citing Delgado Decl. ¶ 19)).  ICE then submitted a request for a travel document from the Jordanian consulate on December 31, 2025.  (*See* Pet. ¶ 19; Resp. 3 (citing Delgado Decl. ¶ 23)).  The Jordanian consulate denied ICE's request to issue a travel document to Petitioner on March 17, 2026.  (Resp. 3 (citing Delgado Decl. ¶ 23)).  On March 18, 2026, ICE submitted a request to the Israeli Consulate for issuance of a travel document and sent a follow up email on April 21, 2026, requesting an update.  (*See id.* (citing Delgado Decl. ¶¶ 24–25)).  ICE's request to the Israeli Consulate remains pending.  (*See id.* (citing Delgado Decl. ¶ 27)).

Petitioner asserts four claims for relief.  (*See generally* Pet.).  In Count I, Petitioner alleges Respondents violated the Administrative Procedure Act, 5 U.S.C. section 706(2)(A) ("APA"), by "unilaterally designating a country for removal that has categorically rejected" him and "using that futile designation to justify prolonged detention[.]"  (*Id.* ¶ 28 (alteration added); *see also id.* ¶¶ 26–29).  In Count II, Petitioner alleges that Respondents violated the Accardi doctrine by revoking his order of supervision without providing notice or a meaningful opportunity to be heard, contrary to applicable agency regulations.  (*See id.* ¶¶ 30–33).  In Count III, Petitioner alleges that Respondents' decision to deprive him of his liberty without a pre-deprivation hearing or an opportunity to be heard violates the Fifth Amendment.  (*See id.* ¶¶ 34–37).  And in Count IV, Petitioner alleges that his detention for over 182 days violates the Due Process Clause of the Fifth

Amendment because it surpasses the period deemed presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* ¶¶ 38–41).

According to Respondents, Petitioner's detention is not unreasonably prolonged and does not violate the Constitution because he is "being detained to effectuate his removal and there is a significant likelihood of removal in the reasonably foreseeable future." (Resp. 1). Respondents do not address Counts I, II, and III of the Petition. (*See generally* Resp.).[3]

## II.  LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may issue to a petitioner who demonstrates he is detained in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas*, 533 U.S. at 687.

## III.  DISCUSSION

Petitioner asserts that his continued detention under section 1231 violates the Fifth Amendment because it exceeds the presumptively reasonable period of detention the Supreme Court recognized in *Zadvydas*. (*See* Pet. ¶ 20, 40). In *Zadvydas*, the Court concluded that detention under section 1231 is "presumptively reasonable" if it does not exceed 180 days but clarified that this presumption "does not mean that every alien not removed [within 180 days] must be released[.]" *Zadvydas*, 533 U.S. at 701 (alterations added); *see also id.* ("To the contrary, an

---

[3] The Court entered an Order requiring Respondents to submit a supplemental response addressing Counts I, II, and III of the Petition. (*See* May 4, 2026 Order [ECF No. 11] 3). Remarkably, on May 7, 2026, Respondents submitted a two-sentence response stating they "have no new facts or legal arguments in support of their position." (Respondents' Resp. to Order Requiring Supplmental [sic] Briefing [ECF No. 13]). A statement conceding the correctness of Petitioner's arguments to which they have no rebuttal would have been the ethical and professional way to respond to the Court's Order and the Petition.

alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). Once detention surpasses 180 days, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id.*

Petitioner states that Jordan's and Israel's historical refusals to accept him means it is "structurally impossible for him to be removed from the United States in the reasonably foreseeable future." (Pet. ¶ 25). Again, Jordan and Israel previously refused to issue Petitioner travel documents or recognize him as a citizen, leading to his release on an OSUP on June 18, 2013. (*See id.* ¶ 14; OSUP 2). Because Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [Respondents] must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (alteration added).

Respondents contend that "there is a significant likelihood of removal in the reasonably foreseeable future" to either Jordan or Israel, but their lack of evidence suggests otherwise. (Resp. 1). The record reflects that there is no significant likelihood Petitioner will be removed to Jordan in the reasonably foreseeable future based on the Jordanian Consulate's March 17, 2026 refusal. (*See id.* 3 (citing Delgado Decl. ¶ 23)). As for Israel, Respondents describe their ongoing, post-detention efforts to obtain travel documentation from Israel to effectuate Petitioner's removal. (*See* Delgado Decl. ¶¶ 24–25). But Israel already denied Petitioner a travel document on December 16, 2025, because he lacked an Israeli identification document. (*See* Resp. 3 (citing Delgado Decl. ¶ 19)). Respondents provide no evidence that Petitioner now possesses such identification, nor do

they explain why their March 18, 2026, request is reasonably likely to succeed where the prior, recent request failed.  (*See generally id.*).

Although Respondents establish that they are attempting to secure a travel document from Israel (*see* Delgado Decl. ¶¶ 24–25, 27), they present no evidence to support their position that Petitioner's removal is likely in the reasonably foreseeable future.  (*See generally* Resp.); *see Zadvydas*, 533 U.S. at 702 (rejecting the Fifth Circuit's holding that "continued detention is lawful as long as good faith efforts to effectuate deportation continue" (alteration adopted; quotation marks and citation omitted)).  Because Respondents have failed to rebut Petitioner's showing that there is no likelihood of removal in the reasonably foreseeable future, Petitioner is entitled to habeas relief under *Zadvydas* authorizing his release on an OSUP.  The Court therefore grants Petitioner relief as to Count IV.

***Attorney's Fees.***  Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  (*See* Pet. 10).  Under the EAJA, "[a] party that prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees, court costs, and other expenses." *Melkonyan v. Sullivan*, 501 U.S. 89, 91 (1991) (alteration added; citing 28 U.S.C. § 2412).  The statute extends to prevailing parties in civil actions against "any agency or any official of the United States acting in his or her official capacity[.]"  28 U.S.C. § 2412(a)(1) (alteration added); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (habeas proceedings are civil (citation omitted)).

To recover fees under the EAJA, "the prevailing party must submit to the court an application for fees and expenses 'within thirty days of final judgment in the action.'"  *Melkonyan*, 501 U.S. at 91 (quoting 28 U.S.C. § 2412(d)(1)(B)).  As the Court rules in Petitioner's favor, Petitioner may apply within 30 days of final judgment showing he is a prevailing party, the amount

sought, and that the position of the United States was not substantially justified. *See Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, No. 05-80339-Civ, 2006 WL 8430907, at *1 (S.D. Fla. May 5, 2006) (citing 28 U.S.C. § 2412(d)(1)(B)); *see also De La Caridad Brito v. Saul*, No. 19-cv-22911, 2020 WL 7248247, at *1 (S.D. Fla. Nov. 9, 2020) ("An EAJA request is timely if made within 30 days of the final judgment, which, if no appeal is taken, is 90 days from the judgment's entry." (quotation marks and citations omitted)).

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner, Hussam Mohammad Abuel-Hawa's Petition for Writ of Habeas Corpus . . . **[ECF No. 1]** is **GRANTED in part**.[4]  Respondents shall immediately release Petitioner upon conditions of supervision under 8 U.S.C. section 1231(a)(3).

**DONE AND ORDERED** in Miami, Florida, this 11th day of May, 2026.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[4] The Court declines to reach the merits of Counts I, II, and III, as its resolution of Count IV renders consideration of Counts I, II, and III unnecessary. *See S. Fla. Water Mgmt. Dist. v. Fed. Emergency Mgmt. Agency*, No. 13-80533-Civ, 2014 WL 4805856, at *11 (S.D. Fla. Sep. 18, 2024).